[No. A035526. First Dist., Div. Two. Aug. 20, 1987.]

COUNTY OF ALAMEDA, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
DARLENE W., Real Party in Interest.

COUNSEL

Stephen G. Blitch, James C. Martin, Mark E. Barmore, Peter W. Davis and Crosby, Heafey, Roach & May for Petitioner.

No appearance for Respondent.

J. Frederick Haley and Matthew D. Haley for Real Party in Interest.

OPINION

SMITH, J.—This petition presents the question of whether the identity of a mental patient who allegedly raped another in a county facility is privileged against discovery by the alleged victim in a personal injury action. We hold under the facts of this case that it is not. In doing so, we limit the impact of our holding in *Smith* v. *Superior Court* (1981) 118 Cal.App.3d 136 [173 Cal.Rptr. 145].

## BACKGROUND

Petitioner, the County of Alameda, defendant in a personal injury action predicated on negligent supervision in its Highland Hospital Emergency Psychiatric Service (hospital), seeks a writ of mandate to restrain the enforcement of respondent court's discovery order requiring disclosure of the name, address and telephone number of a male patient who allegedly raped plaintiff and real party in interest Darlene W., another patient.[1] Petitioner contends that the information is protected, and thus immune from discovery, under the psychotherapist-patient privilege (Evid. Code, §§ 1010-1027)[2] and the privacy provision of our state Constitution (art. I, § 1).[3]

The complaint alleges that while Darlene W. was a patient at the hospital, a locked facility providing psychiatric evaluation and treatment, she was forced into the men's bathroom and raped by a male fellow patient. One of real party's interrogatories requested "the name, address, and telephone number of the man found in the bathroom with plaintiff at the time of the incident." Petitioner refused to answer the interrogatory claiming the matter privileged.

Petitioner's opposition stated: "Plaintiff was brought to Highland General Hospital by her mother during the early morning hours of July 7, 1984. . . . [¶] At approximately 4:30 p.m. on July 7, 1984, plaintiff was found by a nurse in the bathroom inside the locked service with a male fellow patient. The plaintiff was fully clothed. At that time, plaintiff denied the male patient did anything to her or with her." Petitioner's opposition included the affidavit of a staff mental-health specialist revealing that the man found with Darlene W. was also a patient.[4]

## DISCUSSION

The psychotherapist-patient privilege provides, in parts relevant here, that "the patient, whether or not a party, has a privilege to refuse to

---

[1] Plaintiff and real party in interest, Darlene W., filed this action by her conservator, Elizabeth Telphy.

[2] All future statutory references are to the Evidence Code unless otherwise indicated.

[3] Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining *safety*, happiness, and *privacy*." (Italics added.)

[4] We note that real party's interrogatory was carefully framed to avoid revealing whether the man was a patient at the hospital and that it was petitioner's own response that revealed that fact. Whether petitioner has thereby waived any privilege (see Marcus, *The Perils of Privilege: Waiver and the Litigator* (1986) 84 Mich. L.Rev. 1605) is a question we do not reach since we find the matter not privileged.

disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist if the privilege is claimed by: [¶](a) The holder of the privilege; [or] [¶](b) A person who is authorized to claim the privilege by the holder of the privilege; . . ." (§ 1014.)

A "confidential communication" for these purposes is defined as "information, including information obtained by an examination of the patient, transmitted between a patient and his psychotherapist in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation, or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the psychotherapist is consulted, and includes a diagnosis made and the advice given by the psychotherapist in the course of that relationship." (§ 1012.)

■ The precise issue in this case is whether the patient's identity (name, address and phone number) is protected under the privilege—in other words, whether it should be treated as a "confidential communication."

We addressed this question, in a different context, in *Smith v. Superior Court, supra,* 118 Cal.App.3d 136 (*Smith*), and petitioner relies on that decision here. *Smith* was a marital dissolution action in which we held that the names of the husband's psychiatric patients were not discoverable by the wife to ascertain his income. The psychotherapist-patient privilege, we observed, was to be construed in favor of the patient and was based in part on the constitutional right to privacy. (*Id.,* at p. 140, citing *In re Lifschutz* (1970) 2 Cal.3d 415, 432 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1].) We relied on settled law that disclosure of the identity of a patient violates even the less stringent, physician-patient privilege "where such disclosure reveals the patient's ailment" (*Smith, supra,* 118 Cal.App.3d at p. 140) and noted that divulging the fact of psychiatric treatment, while not revealing the particular nature of a patient's ailment, nevertheless impliedly connotes that the patient suffered from some mental or emotional problem (*id.,* at pp. 141-142; see *City of Alhambra v. Superior Court* (1980) 110 Cal.App.3d 513, 518-519 [168 Cal.Rptr. 49]). We therefore concluded that the psychotherapist-patient privilege protected the identity of the husband's patients and noted that the wife had less intrusive means of ascertaining the husband's income. (*Smith, supra,* at pp. 141-142.)

Petitioner asks us to mechanically apply *Smith* and hold that the identity of the patient in this case, too, is privileged. We decline to do that.

The accepted rule before *Smith,* commonly invoked in the physician-patient or attorney-client context, was that mere disclosure of the patient's or client's identity was not privileged. Our Supreme Court had said: " 'The whole purpose of the [physician-patient] privilege is to preclude the humiliation of the patient that might follow disclosure of his ailments.' [Citation.] Therefore if the disclosure of the patient's name reveals nothing of any communication concerning the patient's ailments, disclosure of the patient's name does not violate the privilege. [Citation.] If, however, disclosure of the patient's name inevitably in the context of such disclosure reveals the confidential information, namely the ailments, then such disclosure violates the privilege. [Citations.] Conversely if the disclosure reveals the ailments but not the patient's identity, then such disclosure would appear not to violate the privilege." (*Rudnick* v. *Superior Court* (1974) 11 Cal.3d 924, 933-934, fn. 13 [114 Cal.Rptr. 603, 523 P.2d 643].) In other words, "[when] disclosure of the fact of [psychotherapist] consultation also of necessity discloses the nature of the condition for which the patient sought treatment, then the fact of disclosure also becomes privileged. [Citation.]" (*City of Alhambra* v. *Superior Court, supra,* 110 Cal.App.3d 513, 518.) Also, the statutory definition of "confidential communication"—essentially the same for the psychotherapist-patient (§ 1012), physician-patient (§ 992) and attorney-client (§ 952) privileges—does not by its express language include the identity of every client or patient.

What motivated our holding in *Smith* was the practical, policy-based reason that a person might be embarrassed by the mere disclosure that he or she had consulted with or been treated by a psychotherapist, even though the specific nature of the "ailment" is not disclosed, and thus might be dissuaded from seeking therapy. The "ailment" prompting the need for therapy might range from minor stress or insomnia to the deepest psychosis, just as the need to see a physician or an attorney could range from innocuous to profoundly embarrassing reasons. Nevertheless, the very notion of psychotherapy carries the stigma of a "mental or emotional problem" and so might in itself be embarrassing (*Smith, supra,* 118 Cal.App.3d 136, 141; *City of Alhambra* v. *Superior Court, supra,* 110 Cal.App.3d 513, 519) regardless of the underlying "ailment." It may be that, with growing understanding and acceptance of psychotherapy by the public in general, the mere fact of having sought or received psychotherapy will someday lose all negative connotations. That day has not yet arrived.

Despite the negative connotation of a "mental or emotional problem," however, we bear in mind that the connotation is a vague one and that the cost of privilege can be dear. In this case, as respondent court noted: "[Darlene W.] is a mentally ill person who may well have difficulty presenting her case without corroboration, particularly in light of defendant's claims as to

her statements at the time of the incident. The alleged rapist is the only other witness. His testimony may be vital both on the issue as to whether a rape occurred at all, and as to the quality of supervision in the psychiatric ward." As a practical matter, Darlene W. will be deprived of her day in court if the man's identity is not disclosed. She does not ask for the type of communications that would reveal the man's particular problems or treatment—only his identity and the chance to prove her case from whatever nonprivileged sources she might uncover from that bare-bones beginning.

■ Our Supreme Court has acknowledged " 'the growing importance of the psychiatric profession in our modern, ultracomplex society.' Thus for reasons of policy the psychotherapist-patient privilege has been broadly construed in favor of the patient. [Citations.] Confidential communications between psychotherapist and patient are protected in order to encourage those who may pose a threat to themselves or to others, because of some mental or emotional disturbance, to seek professional assistance. [Citation.]" (*People* v. *Stritzinger* (1983) 34 Cal.3d 505, 511 [194 Cal.Rptr. 431, 668 P.2d 738].) ■ The privilege "has been recognized as an aspect of the patient's constitutional right to privacy. [Citations.] It is also well established, however, that the right to privacy is not absolute, but may yield in the furtherance of compelling state interests. [Citations.]" (*Ibid.*) In other words, " '[e]ven though a patient's interest in the confidentiality of the psychotherapist-patient relationship rests, in part, on constitutional underpinnings, all state "interference" with such confidentiality is not prohibited.' . . . 'The constitutional right is by no means absolute. The state's interest in facilitating the ascertainment of truth in connection with legal proceedings is substantial enough to compel disclosure of a great variety of confidential material, including even communications between a psychotherapist and his patient.' " (*Ibid.*, citation deleted.)

■ Here, we are not concerned with the question of when communications expressly designated by statute as privileged must yield to superior interests; the question is whether a judicially declared expansion of "privileged communications" to include patient identity should be broadly read to bar the disclosure of identity in *every* case, no matter what the circumstances.

■ In answering that question, we are guided by a policy of judicial restraint which the Legislature has declared in this area. Section 911 warns: "Except as otherwise provided by statute: [¶](a) No person has a privilege to refuse to be a witness. [¶](b) No person has a privilege to refuse to disclose any matter or to refuse to produce any writing, object, or other thing. [¶](c) No person has a privilege that another shall not be a witness or shall not disclose any matter or shall not produce any writing, object, or

other thing." By that language, "the Legislature clearly intended to abolish common law privileges and to keep the courts from creating new nonstatutory privileges as a matter of judicial policy. [Citations.] Thus, unless a privilege is expressly or impliedly based on statute, its existence may be found only if required by constitutional principles, state or federal." (*Welfare Rights Organization* v. *Crisan* (1983) 33 Cal.3d 766, 769 [190 Cal.Rptr. 919, 661 P.2d 1073, 31 A.L.R.4th 1214]; *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977].) "[T]he area of privilege 'is one of the few instances where the Evidence Code precludes the courts from elaborating upon the statutory scheme'. . . ." (*Dickerson* v. *Superior Court* (1982) 135 Cal.App.3d 93, 99 [185 Cal.Rptr. 97], quoting Cal. Law Revision Com. com. to § 911.)

■ We hold that the *Smith* rule declaring the patient's identity to be a privileged communication should not rigidly apply in every case. In extraordinary cases of need for disclosure, a court retains discretion to order the patient's identity revealed. Revelation of the patient's identity raises only the broadest inference of mental or emotional problems. That inference, moreover, remains static from one case to the next. ■ On the other side, a particular litigant's need for disclosure can range from mere desire for corroborating or cumulative proof to, as in this case, facts essential to the cause of action and to the ability to conduct meaningful discovery. Unlike the situation in *Smith,* the information may be crucial and there may be no other way of obtaining it.

We have already noted that the need for disclosure of the alleged assailant's identity is crucial to this case—that Darlene W. is effectively deprived of her day in court without it, stymied in her efforts at meaningful discovery and perhaps hampered in proving that the assault even took place. This need for disclosure is extraordinary standing alone.

■ In addition, however, other compelling policy considerations are at work. Darlene W. was allegedly assaulted while a patient committed to the hospital's care. The case implicates both her personal constitutional right to pursue and obtain safety (see fn. 3, *ante*) and public concern for the safety of committed patients in general. In *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166] (*Tarasoff*), our Supreme Court examined the statutory exception for psychotherapist disclosures which are necessary to prevent threatened danger to third parties (§ 1024). Noting the public importance of "safeguarding the confidential character of psychotherapeutic communication," the court noted as well "the public interest in safety from violent assault" and that the Legislature had specifically undertaken "the difficult task of balancing [those] countervailing concerns." (*Id.,* at p. 440.) The court concluded that

"the public policy favoring protection of the confidential character of patient-psychotherapist communications must yield to the extent to which disclosure is essential to avert danger to others." (*Id.,* at p. 442.) In words echoed by respondent court in this case, the *Tarasoff* court said, "The protective privilege ends where the public peril begins." (*Ibid.*)

Darlene W.'s case apparently does not involve averting a specific, known threat by a patient, but it does involve the security measures at the hospital—measures which may be still in force and inadequate. Federal courts readily recognize that a patient (or prisoner) retains a liberty interest in personal security while confined under state authority and is therefore entitled to protection from harm by dangerous fellow patients (or prisoners). (*Youngberg* v. *Romeo* (1982) 457 U.S. 307, 314-316 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; *Goodman* v. *Parwatikar* (8th Cir. 1978) 570 F.2d 801, 804; *Harper* v. *Cserr* (1st Cir. 1976) 544 F.2d 1121, 1123; see Huber et al., *Hospitalization, Arrest, or Discharge: Important Legal and Clinical Issues in the Emergency Evaluation of Persons Believed Dangerous to Others* (1982) 45 Law & Contemp. Probs. 99, 119-121; Note, *The Case for a Federal Psychotherapist-Patient Privilege that Protects Patient Identity* (1985) Duke L.J. 1217-1226.)

New York courts, when faced with facts similar to those in this case, have focused on fairness and the state's duty toward persons committed to its care. In *Boykin* v. *State* (N.Y. Ct.Cl. 1958) 13 Misc.2d 1037 [179 N.Y.S.2d 197], the court expressly sanctioned a discovery order requesting the names of patients who may have witnessed the incident and hospital records relating to the staff's observations (as distinct from their professional diagnoses and prognoses) of the alleged assailant, whose identity was known, as well as the examination of a hospital director as to the number of employees on duty at the time of the incident. (*Id.,* at p. 200; accord *Torres* v. *State* (1958) [14 Misc.2d 246] [179 N.Y.S.2d 201, 202] [assault by one institutionalized patient on another]; see *Barry* v. *State* (1964) [44 Misc.2d 568] [254 N.Y.S.2d 306]; *Wilson* v. *State* (1971) 36 App.Div.2d 559 [317 N.Y.S.2d 546, 549] [prisoners].)

The *Tarasoff* court respected the fact that the Legislature had weighed the pros and cons of disclosure and had specifically carved out an exception for disclosures needed to avert known danger to others. (*Tarasoff, supra,* 17 Cal.3d 425, 440-441.) Here, the Legislature has not called for such an "exception," but it has not specifically called for patient identity to be privileged in the first place. The *Smith* case accomplished that by giving the statutory definition of "confidential communication" (§ 1012) a broad reading consistent with probable legislative intent.

█ The limitation that we announce in this case will have narrow application and will not undermine the policy considerations we defined in *Smith*. Limiting *Smith* in this way is also consistent with the Legislature's directive that courts should avoid elaborating upon the statutory scheme wherever possible (§ 911; *Dickerson* v. *Superior Court, supra,* 135 Cal.App.3d 93, 99).

Finally, our limitation of *Smith* is consistent in result with existing authority. In *Smith* itself, we denied disclosure to a wife in a dissolution action who needed the names of her husband's patients only to better ascertain his income, and she had alternative ways of doing that. (*Smith, supra,* 118 Cal.App.3d 136, 142.) We have noted more recently, citing *Smith,* that "even the identity of the patient *may . . .* come within the privilege." (*Reynaud* v. *Superior Court* (1982) 138 Cal.App.3d 1, 10 [187 Cal.Rptr. 660], italics added.)

In *City of Alhambra* v. *Superior Court, supra,* 110 Cal.App.3d 513, a precursor of *Smith* which also recognized the implication of mental or emotional problems inherent in psychotherapeutic treatment, a plaintiff suing several police officer defendants for assault and battery, other torts and deprivation of civil rights was denied discovery of the places and dates of any treatment the defendants might have received in mental institutions or from psychiatrists (as well as the nature of the conditions for which treatment was received). (*Id.,* at pp. 518-519.) The information was apparently sought to show that one of the officers—the actual assailant—was known by the others to be vicious and unfit for his job and that those other officers failed to protect the plaintiff from attack. (*Id.,* at p. 517.) The plaintiff already knew the assaulting officer's identity (*ibid.*) and thus had the opportunity to discover any such information available from nonprivileged sources.

Most recently, it was held in *Rosso, Johnson, Rosso & Ebersold* v. *Superior Court* (1987) 191 Cal.App.3d 1514 [237 Cal.Rptr. 242], that a plaintiff suing for injuries allegedly caused by use of an intrauterine device could not discover the identities of women who had responded to attorney advertisements directed at other possible victims of the device as potential clients. The case actually involved the attorney-client privilege although the court found *Smith* analogous in that disclosing the names of the women would necessarily disclose the specific nature of their medical problem, facts presumably revealed in confidence. (*Id.,* at pp. 1518-1519.) The discovery was not essential to the plaintiff's case. More importantly, the disclosure would have revealed a specific medical problem.

█ We hold that respondent court correctly ordered disclosure of the alleged rapist's name, address and telephone number. In the interest of

minimizing unnecessary invasion of the man's privacy interests, we direct the court to protect the information from disclosure to anyone other than real party in interest.

### DISPOSITION

The alternative writ is discharged and the petition for a peremptory writ is denied.

Kline, P. J., and Rouse, J., concurred.

Petitioner's application for review by the Supreme Court was denied November 12, 1987.