157 Ariz. 210 (1988)
755 P.2d 1198
HOSPITAL CORPORATION OF AMERICA, doing business as Sonora Desert Hospital, Petitioner,
v.
SUPERIOR COURT OF PIMA COUNTY, the Honorable Gilbert Veliz, Judge of the Superior Court, Juvenile Division, Respondents, and MINOR IN PIMA COUNTY JUVENILE ACTION NUMBER J-94007-1, Real Party in Interest.
No. 2 CA-SA 88-0057.
Court of Appeals of Arizona, Division 2, Department B.
May 19, 1988.
*211 Chandler, Tullar, Udall & Redhair, P.C. by Christopher J. Roads, Tucson, for petitioner.
Harold L. Higgins, Pima County Public Defender by Susan Q. Shetter, Tucson, for real party in interest.
OPINION
ROLL, Judge.
Sonora Desert Hospital (Sonora) brings this special action challenging the juvenile court's order in a delinquency proceeding requiring Sonora to furnish defense counsel with the names and home addresses of four minor patients residing at Sonora on the day of an alleged assault. Sonora has no equally plain, speedy or adequate remedy by appeal. Ariz.R.Spec. Action P. 1, 17A A.R.S. Compliance with the trial court's order would defeat the privilege claimed by Sonora on behalf of its patients. This matter also presents issues of first impression in this jurisdiction. Accordingly, we assume jurisdiction. For the reasons set forth below, we decline to grant relief.
FACTS
Sonora is a psychiatric hospital which provides medical care for mental illness and alcohol and drug dependency. On March 13, 1988, a minor undergoing treatment at Sonora allegedly assaulted a psychiatric technician. Delinquency proceedings were commenced against the minor, who claimed that he acted in self-defense. Thereafter, the minor's attorney served a subpoena duces tecum upon Sonora requiring Sonora to produce the following information:
The last names and addresses of any and all minors residing at Sonora Desert Hospital on or about March 13, 1988. The last names and addresses of any and all minors residing at Sonora Desert Hospital on or about March 13, 1988 with the last [sic] name of Ronnie, Jeannie, Pamie or Danielle.
Sonora moved to quash the subpoena, asserting that compliance with it would violate the physician-patient privilege of the various minors undergoing treatment at its facility. The trial court entered an order which stated:
IT IS ORDERED that the Motion to Quash the Subpoena is DENIED.
IT IS FURTHER ORDERED that the last name and address, only, of said individuals whose first name is listed in the subpoena is to be produced for the defense.
*212 Although the trial court's order purported to deny Sonora's motion to quash the subpoena, it is clear from the totality of the order that Sonora's motion was partially granted. The defense subpoena requested the names and addresses of all minors at Sonora on the day of the alleged assault, as well as the four minors mentioned by first name. The trial court avoided the unnecessary disclosure of the names and addresses of other patients at Sonora who may or may not have witnessed the incident by limiting disclosure to the four minors mentioned by name in the subpoena, those individuals who allegedly witnessed the assault. Sonora filed this special action challenging the trial court's order.
PHYSICIAN-PATIENT PRIVILEGE
Rule 501, Ariz.R.Evid., 17A A.R.S., provides:
Except as otherwise provided by the Constitution of the United States, the Constitution of Arizona, or by applicable statute or rule, privilege shall be governed by the principles of the common law as they may be interpreted in light of reason and experience, or as they have been held to apply in former decisions.
Because privileges contravene the principle that the public has a right to every person's evidence, they are strictly construed. Trammel v. United States, 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186, 195 (1980); M. Udall and J. Livermore, Law of Evidence § 71 at 123-24 (1982). The physician-patient privilege did not exist under the common law. Whalen v. Roe, 429 U.S. 589, 602 n. 28, 97 S.Ct. 869, 877 n. 28, 51 L.Ed.2d 64, 75 n. 28 (1977); McCormick on Evidence § 101 (E. Cleary ed. 1984). Accordingly, we must look to the statutes to ascertain the existence and scope of the physician-patient privilege.
Both the criminal code and the statutes pertaining to civil actions contain a physician-patient privilege provision. A.R.S. § 13-4062(4) provides that a physician shall not be examined as a witness "without consent of his patient, as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient." In State v. Beaty, 7 Ariz.Adv.Rep. 15, 18 (May 5, 1988), the Arizona Supreme Court stated that § 13-4062 (4) applies only when the four elements of the privilege are met, that is, (1) the patient does not consent to testimony, (2) the witness is a physician or surgeon, (3) the information was imparted to the physician while he was attending the defendant, and (4) the information was necessary to enable the physician to prescribe or act for the treatment of the defendant. A.R.S. § 12-2235 provides that a physician shall not be examined in a civil action "as to any communication made by his patient with reference to any physical or mental disease or disorder or supposed physical or mental disease or disorder or as to any such knowledge obtained by personal examination of the patient."
As Sonora correctly asserts, when neither the patient nor the physician are parties to a proceeding in which discovery of hospital records containing privileged information is sought, the hospital must assert the privilege. See Tucson Medical Center, Inc. v. Rowles, 21 Ariz. App. 424, 429, 520 P.2d 518, 523 (1974). Sonora asserts the privilege and contends that the mere disclosure of the names of the potential witnesses as patients of a psychiatric hospital would violate the privilege. Sonora argues that such disclosure would effectively result in revealing the medical condition and treatment of those individuals by identifying them as patients of a psychiatric hospital. Sonora maintains that a patient's identity falls within the physician-patient privilege where disclosure of that identity would reveal the patient's ailment.
Sonora relies heavily upon Ziegler v. Superior Court, 131 Ariz. 250, 640 P.2d 181 (1982), appeal following remand, 134 Ariz. 390, 656 P.2d 1251 (App. 1982). Ziegler arose from a medical malpractice action based on an allegedly unnecessary implantation of a pacemaker. Plaintiff's *213 counsel sought to discover the medical records of all former patients who had undergone similar procedures, and the trial court ordered the hospital to provide to the court the names and addresses of those patients so their consent could be obtained for the use of their medical records at trial. The supreme court vacated the trial court's order, stating:
In our judgment the attempt by the trial court to use the identity of the patient, even to achieve fairness between the litigants, violates the physician-patient privilege.
* * * * * *
The challenged order of the respondent court undermines the privilege by having the respondent doctors disclose the identity of the patients they had treated. Disclosure of such information even to the trial court is nevertheless disclosure which is not authorized. The former patients are entitled to be left to their privacy, secure in the belief that their confidences, treatment, and records are protected from disclosure.
131 Ariz. at 251, 640 P.2d at 182. This court subsequently ordered that the former patients' records could be discovered and used at trial so long as any references tending to identify the patients, such as names, addresses, and places of employment, were deleted. We recognized that a blanket prohibition against examination and use of the records would result in an injustice and that the spirit of the physician-patient privilege would be preserved by our order safeguarding the privacy of the former patients whose charts were relevant to Ziegler's claim. 134 Ariz. at 394, 656 P.2d at 1255.
In Ziegler, we quoted with approval from Rudnick v. Superior Court of Kern County, 11 Cal.3d 924, 114 Cal. Rptr. 603, 523 P.2d 643 (1974), in which the California Supreme Court reversed a trial court order denying discovery on the ground that production of documents would be violative of the physician-patient privilege. The California Supreme Court stated:
[I]f the disclosure of the patient's name reveals nothing of any communication concerning the patient's ailments, disclosure of the patient's name does not violate the privilege (citation omitted). If, however, disclosure of the patient's name inevitably in the context of such disclosure reveals the confidential information, namely the ailments, then such disclosure violates the privilege (citations omitted). Conversely if the disclosure reveals the ailments but not the patient's identity, then such disclosure would appear not to violate the privilege.
11 Cal.3d at 933, 934 n. 13, 114 Cal. Rptr. at 610-11 n. 13, 523 P.2d at 650-51 n. 13. Sonora also relies on Rudnick to support its argument that the order requiring it to identify the potential witnesses would result in disclosure of their conditions or treatment.
California recently revisited the matter of the physician-patient privilege as a bar to discovery of a patient's identity. In Alameda County v. Superior Court, 194 Cal. App.3d 254, 255, 239 Cal. Rptr. 400 (1987), a female patient who had allegedly been raped in a county facility attempted to learn the identity of the male mental patient suspected of the assault. The court held that the identity of the alleged perpetrator was discoverable, limiting the application of the physician-patient privilege. In Alameda County, the court recognized that divulging the fact of psychiatric treatment impliedly revealed that the patient suffered from some mental or emotional problem. The court, however, stated:
Despite the negative connotation of a "mental or emotional problem," however, we bear in mind that the connotation is a vague one and that the cost of privilege can be dear.... As a practical matter, [the plaintiff] will be deprived of her day in court if the man's identity is not disclosed. She does not ask for the type of communications that would reveal the man's particular problems or treatment  only his identity and the chance to prove her case from whatever nonprivileged *214 sources she might uncover from that bare-bones beginning.
Id. at 259, 239 Cal. Rptr. at 403. The physician-patient privilege has been discussed in the context of a patient's right to privacy. Ziegler, supra; Alameda County, supra. As the California court stated in Alameda County, the state's interest in ascertaining the truth during legal proceedings is substantial enough to outweigh privacy interests and to require disclosure of confidential material, including communications between a psychotherapist and his patient. 194 Cal. App.3d at 259, 239 Cal. Rptr. at 403, quoting People v. Stritzinger, 34 Cal.3d 505, 511, 194 Cal. Rptr. 431, 668 P.2d 738 (1983).
Sonora argues that the minor has not attempted other means of obtaining the information sought. The disclosure of the potential witnesses' identities clearly is crucial to the minor's defense. The minor and the potential witnesses were all patients at a hospital, known only to one another by their first names. We are unaware of any investigative or discovery method by which the minor could ascertain the identity of those potential witnesses.
DUE PROCESS AND COMPULSORY PROCESS
In the matter before us, the physician-patient privilege is in conflict with the minor's right to compulsory process and with the due process right to a fair trial. Because delinquency proceedings are quasi-criminal in nature, all constitutional rights afforded to criminal defendants are extended to juveniles. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). In other words, the court must comply with the due process requirements of the fourteenth amendment to the United States Constitution which guarantees the minor the right to a fair trial. We agree with the juvenile court that "this is one of those circumstances where the `due process' requirements outweigh the policy against disclosure."
In State v. Morales, 129 Ariz. 283, 630 P.2d 1015 (1981), our supreme court held that statutes prohibiting discovery of juvenile court records and Department of Corrections records could not be used to prevent discovery when the information sought was necessary to a criminal defendant's right to confront witnesses against him. The United States Supreme Court has held that a criminal defendant could not be denied access to confidential records where disclosure, to a reasonable probability, would result in a different outcome at trial. Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). While Morales and Ritchie involved the discovery of information in the possession of the government, similar considerations are at stake in this case, where the minor's ability to present witnesses at trial depends on the identification of those witnesses by Sonora.
The Arizona Constitution provides that "the accused shall have the right ... to have compulsory process to compel the attendance of witnesses in his own behalf." Ariz. Const., art. 2, § 24. The United States Constitution also guarantees that right. U.S. Const. amend. VI ("compulsory process for obtaining witnesses in his favor"). A defendant is entitled to identify and compel the attendance of witnesses in his defense. The United States Supreme Court, when presented with compulsory process arguments, has ruled on due process grounds stating:
This Court has never squarely held that the Compulsory Process Clause guarantees the right to discover the identity of witnesses, or to require the Government to produce exculpatory evidence. [Citation omitted.] Instead, the Court traditionally has evaluated claims such as those raised by Ritchie under the broader protections of the Due Process Clause of the Fourteenth Amendment. [Citations omitted.] Because the applicability of the Sixth Amendment to this type of case is unsettled, and because our Fourteenth Amendment precedents addressing the fundamental fairness of trials establish a clear framework for review, we adopt a due process analysis *215 for purposes of this case. Although we conclude that compulsory process provides no greater protection in this area than those afforded by due process, we need not decide today whether and how the guarantees of the Compulsory Process Clause differ from those of the Fourteenth Amendment.
Ritchie, 480 U.S. at 56, 107 S.Ct. at 1001, 94 L.Ed.2d at 56-57 (emphasis in original). Nonetheless, whether the constitutional rights at issue here involve due process or compulsory process, the accused minor's rights cannot be circumscribed by the evidentiary privilege at issue in this case. See P. Westen, The Compulsory Process Clause, 73 Mich.L.Rev. 71, 170-77 (1974).
We deny relief and affirm the juvenile court's discovery order. As the juvenile court stated, should the potential witnesses be called to testify, the court has the discretion to preserve their privacy by eliminating identifying information from records accessible to the public.
LIVERMORE, P.J., and FERNANDEZ, J., concur.