[No. B035045. Second Dist., Div. Six. Dec. 16, 1988.]

ALVIS JOE SCULL, Petitioner, v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

S. R. Balash, Jr., for Petitioner.

Linda F. Robertson as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Thomas W. Sneddon, Jr., District Attorney, and Gerald McC. Franklin, Deputy District Attorney, for Real Party in Interest.

McKenna, Conner & Cuneo, Aaron M. Peck, Daniel H. Willick and Royanne T. Kashiwahara as Amici Curiae for Real Party in Interest.

**OPINION**

**STONE (S. J.), P. J.**—Alvis Joe Scull (hereafter referred to as petitioner) seeks relief by way of a writ of mandate to compel respondent superior court to set aside its order allowing representatives of the district attorney's office to contact petitioner's former patients. We find that the respondent

superior court order violated the psychotherapist-patient privilege (Evid. Code, § 1010 et seq.) and shall grant the petition.

## FACTS

On March 28, 1988, petitioner was arrested and charged with four counts of sexually molesting a teenaged patient. (Pen. Code, § 288, subd. (a).) Petitioner, aged 71, had retired from the practice of psychiatry and maintained his patient records in his residence.

Immediately following petitioner's arrest, the Sheriff of Santa Barbara County issued a press release which included details of the charges against petitioner and requested people who might have information concerning any offenses committed by petitioner upon any of his other patients to contact the authorities. Local newspapers, television and radio stations broadcasted the press release. Shortly thereafter, six former patients came forward to give varying accounts to the authorities of having been sexually molested during the course of treatment as teenaged patients of petitioner. In addition, the foster parent of another patient told the police that her child had been molested by petitioner while under his care.

On May 16, 1988, a search warrant was served upon petitioner's residence. Information concerning petitioner's patients was seized and placed in possession of a special master. (Pen. Code, § 1524.)

On June 1, 1988, the district attorney moved to have the names, telephone numbers, and addresses of petitioner's female patients, for the past 10 years, released to him. He sought this information in order to contact the patients and determine whether any of them had been sexually abused or molested during treatment sessions.

On June 6, 1988, over petitioner's objection founded upon the psychotherapist-patient privilege, the court conditionally granted the district attorney's motion. The special master was ordered to make a list of the names, ages, addresses, and telephone numbers of all female patients of Doctor Scull for the past 10 years. In an effort to minimize the intrusion into the privacy of petitioner's former patients, the court required that a psychologist or psychiatrist be appointed to initiate any contacts. A former patient would be informed, among other things, that: (a) the caller is a psychologist or psychiatrist employed by the district attorney for the purpose of investigating allegations against Doctor Scull of molestation; (b) she has the right to make no statements, as such information is privileged; (c) if she should choose to discuss the matter, such confidential information would be kept

from all save Doctor Scull and his attorney; and (d) she may elect to become a witness, and to that extent the information may become public.

Petitioner seeks a writ of mandate. ■ He contends that the names, telephone numbers, and addresses of his patients are privileged under Evidence Code section 1014.[1] He asserts that the above rule applies even though a court-appointed therapist will be making the initial contact with the patients and will not, unless instructed otherwise, divulge information obtained.

## DISCUSSION

■ Our society recognizes it to be a denial of a person's right of privacy to allow the proponent of discovery an unfettered right to conduct an inquisition into a deponent's innermost confidences. (*Britt* v. *Superior Court* (1978) 20 Cal.3d 844, 856 [143 Cal.Rptr. 695, 574 P.2d 766].) Thus, there are a number of evidentiary privileges that serve to limit a proponent's right to full disclosure. (E.g., 2 Hogan, Modern Cal. Discovery (4th ed. 1988) § 12.1 et seq., pp. 54-190.)

One such limitation is contained in Evidence Code section 1014. This measure affords a *broad* privilege that prevents the disclosure of communications made between a patient and a psychotherapist. ■ The statutory privilege is founded upon the notion that certain forms of antisocial behavior may be prevented by encouraging those in need of treatment for emotional problems to secure the services of a psychotherapist. (*In re Lifschutz, supra,* 2 Cal.3d at pp. 434-435.) "The patient's innermost thoughts may be so frightening, embarrassing, shameful or morbid that the patient in therapy will struggle to remain sick, rather than to reveal those thoughts even to himself. The possibility that the psychotherapist could be compelled to reveal those communications to anyone . . . can deter persons from seeking needed treatment and destroy treatment in progress." (*Caesar* v. *Mountanos* (9th Cir. 1976) 542 F.2d 1064, 1072 (dis. opn. of Hufstedler, J.) citing Katz et al., Psychotherapy, Psychoanalysis and the Law (1967) pp. 726-727.)

Judicial deference to the patient-psychotherapist privilege also promotes societal weal. "[E]ffective treatment reduces the costs of antisocial behavior attributable to mental illness." (Smith, *Constitutional Privacy in Psychother-*

---

[1] Evidence Code section 1014 provides in pertinent part that "the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist . . . ."

A psychotherapist is required to claim the privilege on his or her patient's behalf. (Evid. Code, §§ 1014, subd. (c), 1015; *In re Lifschutz* (1970) 2 Cal.3d 415, 429-430 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1].)

*apy* (1980) 49 Geo.Wash. L. Rev. 1, 41 (hereafter *Privacy in Psychotherapy*); see also *In re Zuniga* (6th Cir. 1983) 714 F.2d 632, 639 [72 A.L.R.Fed. 380].)

It is recognized that a psychotherapist's capacity to provide effective treatment requires that a patient " '. . . bare his entire self, his dreams, his fantasies, his sins, and his shame. . . .' " (*Taylor* v. *United States* (D.C. Cir. 1955) 222 F.2d 398, 401 [95 App.D.C. 373], fn. omitted.) The accurate diagnosis and effective treatment in psychotherapy are greatly dependent upon conditions of trust and confidentiality between patient and therapist. (Fleming & Maximov, *The Patient or His Victim: The Therapist's Dilemma* (1974) 62 Cal.L.Rev. 1025, 1040-1041.) "Essential to psychotherapy are confidential personal revelations about matters which the patient is normally reluctant to discuss. Frequently, a patient in analysis will make statements to his psychiatrist which he would not make even to the closest members of his family. (Slovenko, *Psychiatry and a Second Look at the Medical Privilege* (1960) 6 Wayne L. Rev. 175, 184-185.) Revelations often concern the most intimate and embarrassing details of a patient's life, and their public exposure may well strip him of much of his own sense of human dignity." (*Lora* v. *Board of Ed. of City of New York* (E.D.N.Y. 1977) 74 F.R.D. 565, 571.)

Indeed, the legislative intent behind Evidence Code section 1014 is clearly in accord with the proposition that confidentiality is the essential ingredient for successful psychotherapy: "Psychoanalysis and psychotherapy are dependent upon the fullest revelation of the most intimate and embarrassing details of the patient's life. . . . Unless a patient . . . is assured that such information can and will be held in utmost confidence, he will be reluctant to make the full disclosure upon which diagnosis and treatment . . . depends." (See Sen. Judiciary Com. com. to Evid. Code, § 1014, West's Ann. Evid. Code (1966) p. 621.)

It is well settled in California that the mere disclosure of the patient's identity violates the psychotherapist-patient privilege. (*Smith* v. *Superior Court* (1981) 118 Cal.App.3d 136, 141-142 [173 Cal.Rptr. 145]; see also *Lora* v. *Board of Ed. of City of New York, supra,* 74 F.R.D. at p. 580; but cf. *In re Zuniga, supra,* 714 F.2d at pp. 640-641.) The rationale for this rule is that the harm to the patient's interest of privacy is exacerbated by the stigma that society often attaches to mental illness. (See *Developments in the Law—Civil Commitment of the Mentally Ill* (1974) 87 Harv. L. Rev. 1190, 1200.) As noted by one commentator: "a person in psychotherapy, by and large, visits his psychiatrist with the same secrecy that a man goes to a bawdy house." (Slovenko, *Psychiatry and a second Look at the Medical Privilege, op. cit. supra,* 6 Wayne L. Rev. 175, 188, fn. 46.) In short, the

disclosure that an individual is seeing a therapist may well serve to discourage any treatment and thereby interfere with the patient's freedom to seek and derive the benefits of psychotherapy. "When a patient seeks out the counsel of a psychotherapist, he wants privacy and sanctuary from the world and its pressures. . . . The patient's purpose would be inhibited and frustrated if his psychotherapist could be compelled to give up his identity without his consent. Public knowledge of treatment by a psychotherapist reveals the existence and, in a general sense, the nature of the malady." (*Smith, supra,* 118 Cal.App.3d at pp. 141-142.)

■ Communications between the patient and psychotherapist are also protected by the constitutional right of privacy. (*Caesar v. Mountanos, supra,* 542 F.2d at p. 1072; *Hawaii Psychiatric Soc., Dist. Branch v. Ariyoshi* (D.Hawaii 1979) 481 F.Supp. 1028, 1038; see *Privacy in Psychotherapy, supra,* 49 Geo.Wash. L. Rev. 1.) "[A] patient's interest in keeping such confidential revelations from public purview, in retaining this substantial privacy, has deeper roots than the California statute and draws sustenance from our constitutional heritage." (*In re Lifschutz, supra,* 2 Cal.3d at p. 431.) Moreover, in California a citizen's right to privacy is independently protected by our state Constitution. Article I, section 1, of the California Constitution provides that all persons have an inalienable right to privacy. (*Committee to Defend Reproductive Rights v. Myers* (1981) 29 Cal.3d 252, 262 [172 Cal.Rptr. 866, 625 P.2d 779, 20 A.L.R.4th 1118]; *City of Santa Barbara v. Adamson* (1980) 27 Cal.3d 123, 130 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219].)

■ However, the patient-psychotherapist privilege is not absolute. (Evid. Code, § 1016; *In re Lifschutz, supra,* 2 Cal.3d at p. 432.) ■ The state has a significant interest in facilitating "'. . . the ascertainment of truth and the just resolution of legal claims . . . .'" (*Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 657-658 [125 Cal.Rptr. 553, 542 P.2d 977]; see also *Caesar v. Mountanos, supra,* 542 F.2d at p. 1069.) Indeed, "[t]he very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." (*United States v. Nixon* (1974) 418 U.S. 683, 709 [41 L.Ed.2d 1039, 1064, 94 S.Ct. 3090].) Moreover, of constitutional dimension is the right of society to seek the redress of wrongs committed against its citizens. (*Sun Co. of San Bernardino v. Superior Court* (1973) 29 Cal.App.3d 815, 822 [105 Cal.Rptr. 873].)

When the right to disclosure clashes with a privilege, the court is required to "indulge in a careful balancing" of the need for disclosure against the fundamental right of privacy. (*Valley Bank of Nevada v. Superior Court, supra,* 15 Cal.3d at p. 657.) The scope of the privilege is determined by

balancing the interests protected by shielding the evidence sought with those advanced by disclosure. (*People* v. *Stritzinger* (1983) 34 Cal.3d 505, 511 [194 Cal.Rptr. 431, 668 P.2d 738]; *County of Alameda* v. *Superior Court* (1987) 194 Cal.App.3d 254, 260 [239 Cal.Rptr. 400].) When the balance swings in favor of disclosure, the court is required to limit the scope of discovery "to the extent necessary for a fair resolution of the lawsuit." (*Moskowitz* v. *Superior Court* (1982) 137 Cal.App.3d 313, 316 [187 Cal.Rptr. 4]; see also *County of Alameda* v. *Superior Court, supra,* at p. 261; *Lora* v. *Board of Ed. of City of New York, supra,* 74 F.R.D. at p. 576.)

■ Exceptions to the confidentiality of the privilege and the patient's interest in privacy are found in certain narrowly circumscribed situations. Accordingly, limited intrusions may be made upon the confidential character of patient-pschotherapist conversations where the government seeks to promote a compelling interest and where there are no less intrusive means of accomplishing its purpose. (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 440-442 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].)

The most common example of permissible intrusion takes place when an individual files suit for damages for injury to his or her psyche. In such instances, it is deemed that the litigant has impliedly waived the privilege. (*Britt* v. *Superior court, supra,* 20 Cal.3d at pp. 862-864; *In re Lifschutz, supra,* 2 Cal.3d 415; *Bond* v. *Dist. Ct., in and for Denver Cty.* (Colo. 1984) 682 P.2d 33, 38.)

In *Lifschutz,* the patient had claimed injury to his psyche. The defendant sought to take the deposition of plaintiff's psychiatrist. The psychiatrist claimed that disclosures made to him by patients were absolutely privileged. The Supreme Court held that the statutory privilege and constitutional right of privacy do not give rise to an absolute privilege for communications made to a psychiatrist (*In re Lifschutz, supra,* 2 Cal.3d at p. 432.) "First, . . . the patient, in raising the issue of a specific ailment or condition in litigation, in effect dispenses with the confidentiality of that ailment and may no longer justifiably seek protection from the humiliation of its exposure. [Fn. omitted.] Second, . . . in all fairness, a patient should not be permitted to establish a claim while simultaneously foreclosing inquiry into relevant matters. [Fn. omitted.]" (*Id.,* at p. 433.)

Some courts have held that a psychotherapist must report the confidences of a patient where the patient poses an immediate threat to others. (*Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d at pp. 433-444; *County of Alameda* v. *Superior Court, supra,* 194 Cal.App.3d at p. 261; *Durflinger* v. *Artiles* (1983) 234 Kan. 484, 492-499 [673 P.2d 86, 93-99]; *McIntosh* v.

*Milano* (1979) 168 N.J.Super. 466, 489 [403 A.2d 500, 511-512].) In *Tarasoff,* the Supreme Court recognized the need for confidentiality in treating a mental health patient, but found that the patient's right to confidentiality would have to yield to the compelling state interest in protecting the public from violent assault by a psychopath. (*Tarasoff, supra,* 17 Cal.3d at p. 442.)

Likewise, in *County of Alameda* v. *Superior Court, supra,* 194 Cal.App.3d 254, a patient in a mental hospital sued the county for injuries allegedly suffered when she was raped by another patient at a mental health facility operated by the county. She sought to discover the name and address of the patient she claimed had raped her. The county opposed the request upon the ground of privilege.

The court upheld the order of the lower court which allowed for discovery of the information. It ruled that the patient's interest in confidentiality must yield where the victim had no other means available to identify her assailant. (*County of Alameda* v. *Superior Court, supra,* 194 Cal.App.3d at p. 261.)

 It is against this backdrop that we are called upon to determine whether the interest of the state in forcing disclosure of the names of the patients is so compelling as to outweigh the patients' interest in confidentiality. The primary justification cited by the district attorney in his quest for discovery centers upon the assertion that communication with the patients will increase the likelihood that petitioner "will be made to answer for his behavior and thereby avert harm to other of his patients." The prosecutor points out that petitioner is a pedophile and that most pedophiles tend to be repeat offenders. Thus, citing *Tarasoff* and *County of Alameda,* the district attorney asserts that disclosure of the names of former patients is necessary to avoid harm to other young victims. This result will be accomplished through the prosecutor's use of information gleaned from discovery to corroborate his case-in-chief.

We find the proffered use of the evidence sought by the prosecution to be insufficient to overcome the patients' right to confidentiality. First, the evidence sought to be obtained does not appear to be *crucial* to the prosecution's case. (Cf. *County of Alameda* v. *Superior Court, supra,* 194 Cal.App.3d at p. 261.) Indeed, the use of evidence demonstrating similar acts of misconduct on the part of petitioner for the purpose of corroboration, even if admissible (Evid. Code, §§ 352, 1101; *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1]), would be of marginal value.

Nor is there any merit to the People's argument that discovery is necessary in order to protect the public from harm. The *Tarasoff* and *County of*

*Alameda* cases involved discovery concerning dangerous *patients*. The policy which requires that a doctor warn of the proclivities of dangerous patients in order to prevent harm to others is not implicated where the persons who are sought to be identified are not sources of danger to the public.

Moreover, there is nothing in the record to suggest that petitioner is still seeing any of his former patients. Hence, the injuries which are complained of had already taken place and there was no evidence before the trial court that injury was likely to occur in the future. The state's interest in discovery was much less here because there was nothing that it could do to prevent the commission of a crime. (*Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d at pp. 439-440; see *Privacy in Psychotherapy, supra,* 49 Geo.Wash.L.Rev. at p. 53.)

Even were we to assume that the People could meet the above-stated criteria, they have failed to demonstrate that the potential benefits of contacting the former patients would outweigh the harm caused by the intrusion. We agree with the proposition that the exercise of the court's power to search for additional victims and evidence of other crimes, if properly used, may be beneficial. However, within such power there exists no small danger of encroachment upon the privacy rights of petitioner's former patients. On the other side of the ledger, further harm would be visited upon these otherwise innocent patients as a consequence of the state's efforts to build its case against petitioner. It does not require the powers of a seer to envision the potential of harm in such contacts: a number of persons of fragile psyche could be traumatized.

Presumably, most of petitioner's former patients consulted him because they were emotionally distressed. Possibly, a number of these individuals remained so even after therapy had been completed. Considerable harm could be visited upon any one of these emotionally troubled people were she to be contacted by the authorities in the context of a criminal investigation. Those who have been cured could have old wounds reopened. Indeed, the very fact of the authorities' knowledge of the patient's having sought the assistance of a psychiatrist could prove to be embarrassing. Such embarrassment may well nigh be compounded by the caller's innuendo that the former patient was possibly the victim of sexual molestation.[2]

---

[2] "[V]ictims of sexual abuse rarely talk about the abuse and even more rarely report it to authorities. Most feel shame, embarrassment and guilt; they also feel isolated, believing that nobody else has been subject to this kind of abuse. Most victims would prefer to put the abuse behind them and forget it. A significant number repress knowledge of the abuse." (State Assem. Office of Research, Sexual Abuse: A Lifelong Legacy (1986) p. 10; see also Comment, *Adult Incest Survivors and the Statute of Limitations: The Delayed Discovery Rule and Long-Term Damages* (1985) 25 Santa Clara L.Rev. 191, 200-208.) Thus, it is not surprising that approximately one-half of all crimes involving rape are reported to the authorities. (Bur. of

The result would be that those in need of psychotherapy may be discouraged by fear of disclosure from seeking the aid of psychotherapists, and those who have been cured may be needlessly harmed. Under the circumstances which have here been presented, there is no permissible exception to the patient-psychotherapist privilege that compels the disclosure of the names of petitioner's former patients.

The evidence being presently sought might be obtained by less intrusive means than those devised by the trial court. Indeed, as the record would indicate, the district attorney has demonstrated some success through the use of the media in Santa Barbara, Ventura, and San Luis Obispo counties and has, through these means, located the names of several of petitioner's former patients who claim to have been molested by petitioner. Given the availability of less intrusive means to pursue the proffered state interests, this court is not persuaded that the remote benefits which might result from contacting petitioner's former patients will outweigh the significant intrusion upon the patients' rights. ■ An order for discovery that advances a compelling state purpose ever so slightly, while causing significant harm to the privacy interests of others, is not acceptable.

## CONCLUSION

Let a writ of mandate issue ordering respondent superior court to set aside its order releasing the materials seized by the special master, and to enter a new order in conformance with the views expressed in this opinion.

Gilbert, J., and Abbe, J., concurred.

Justice Statistics, U.S. Bur. of Justice, Criminal Victimization in the United States, 1983 (1985) p. 92; Bard & Sangrey, The Crime Victim's Book (1979) p. 135; Hindelang & Davis, *Forcible Rape in the United States: A Statistical Profile,* in Forcible Rape (Chappell et al. edits. 1977) pp. 97-99.)