[No. B052812. Second Dist., Div. One. Apr. 26, 1991.]

LAURIE KEIKO ROE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
CLINTON H. ROE, Real Party in Interest.

**COUNSEL**

Jones, Mahoney & Brayton and Thomas C. Brayton for Petitioner.

No appearance for Respondent.

Vandenberg, Newell, Curtis & Nelson and Pamela Bourette-Schuur for Real Party in Interest.

**OPINION**

**ORTEGA, J.**—We conclude the psychotherapist-patient privilege does not apply in this civil action to information reported by a psychotherapist pursuant to the Child Abuse and Neglect Reporting Act. (Pen. Code, § 11171, subd. (b)).[1] We deny the petition for a writ of mandate to compel the superior court to vacate the order requiring the limited deposition of petitioner's psychotherapist, and discharge the alternative writ.

### BACKGROUND

This proceeding involves a tort action by real party in interest (Mr. Roe) against petitioner (Mrs. Roe) for defamation, malicious prosecution, and other injuries that resulted when Mrs. Roe's psychotherapist filed an allegedly false child abuse report against Mr. Roe. Briefly stated, the facts are as follows: During the couple's divorce proceedings, their minor son lived with Mrs. Roe. Mr. Roe had visitation rights, which he exercised. In May 1988, Mrs. Roe made allegedly defamatory statements to her psychotherapist, Dr. Doris DeHardt, which led Dr. DeHardt to file a suspected child abuse report that repeated Mrs. Roe's allegedly defamatory statements. Mr. Roe's visitation rights were restricted when the superior court granted Mrs. Roe a

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

temporary restraining order. However, Mr. Roe's visitation rights were reinstated after an evidentiary hearing in the superior court failed to establish that child abuse had occurred. Similarly, a dependency petition filed by the department of children's services in juvenile court was dismissed for lack of evidence.

Because this proceeding requires the careful balancing of Mrs. Roe's fundamental right to privacy and Mr. Roe's need for disclosure (*Scull* v. *Superior Court* (1988) 206 Cal.App.3d 784, 790-791 [254 Cal.Rptr. 24]), we will first summarize the relevant competing interests that are protected by the Child Abuse and Neglect Reporting Act (§ 11164 et seq., hereinafter Act), the psychotherapist-patient privilege (Evid. Code, § 1010 et seq.), and the child abuse reporting exception to the psychotherapist-patient privilege (§ 11171, subd. (b)).

A. *The Act*

The purpose of the Act "is to protect children from abuse." (§ 11164.) The Act requires all persons participating in any investigation of suspected child abuse to "consider the needs of the child victim and . . . do whatever is necessary to prevent psychological harm to the child victim." (§ 11164.)

In furtherance of this purpose, the Act requires psychotherapists to make telephone reports of known or suspected instances of child abuse immediately or as soon as practically possible after receiving such information within their professional capacity or scope of employment. (§§ 11165.8; 11166, subd. (a).) The Act also requires psychotherapists to file written reports within 36 hours of receiving such information (§ 11166, subd. (a)).

The psychotherapist's reporting duty arises when there is a "reasonable suspicion" of abuse. (§ 11166, subd. (a).) A "reasonable suspicion" exists if "it is objectively reasonable for a person to entertain such a suspicion, based upon facts that could cause a reasonable person in a like position, drawing when appropriate on his or her training and experience, to suspect child abuse. . . ." (§ 11166, subd. (a).) The psychotherapist's failure to file a report required by the Act is a misdemeanor punishable by confinement in county jail for a term not to exceed six months, a fine of not more than $1,000, or both. (§ 11172, subd. (e).)

B. *The Psychotherapist-Patient Privilege*

■ In California, communications between the patient and psychotherapist are protected by both statute and the constitutional right to privacy. (Evid. Code, § 1014; Cal. Const., art. I, § 1; *Scull* v. *Superior Court, supra,*

206 Cal.App.3d at pp. 788, 790.) The California Supreme Court has recognized "the growing importance of the p[s]ychiatric profession in our modern, ultracomplex society" (*In re Lifschutz* (1970) 2 Cal.3d 415, 421 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]), and has broadly construed the psychotherapist-patient privilege in favor of the patient for public policy reasons. (*People* v. *Stritzinger* (1983) 34 Cal.3d 505, 511 [194 Cal.Rptr. 431, 668 P.2d 738].)

Evidence Code section 1014 provides in relevant part that "the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist . . . ."[2] The legislative intent behind this privilege is to promote the confidentiality that is essential for successful psychotherapy. "Psychoanalysis and psychotherapy are dependent upon the fullest revelation of the most intimate and embarrassing details of the patient's life. . . . Unless a patient . . . is assured that such information can and will be held in utmost confidence, he will be reluctant to make the full disclosure upon which diagnosis and treatment . . . depends." (Sen. Com. on Judiciary com. to Evid. Code, § 1014, West's Ann. Evid. Code (1966) p. 621 [Cal. Law Revision Com. com., Deering's Ann. Evid. Code (1986 ed.) § 1014, p. 194].)

Article I, section 1 of the California Constitution provides that all persons have an inalienable right to privacy. The psychotherapist-patient privilege is "an aspect of the patient's constitutional right to privacy. [Citations.]" (*People* v. *Stritzinger, supra,* 34 Cal.3d at p. 511.) "[A] patient's interest in keeping such confidential revelations from public purview, in retaining this substantial privacy, has deeper roots than the California statute and draws sustenance from our constitutional heritage." (*In re Lifschutz, supra,* 2 Cal.3d at p. 431.)

While the psychotherapist-patient privilege is "an aspect of the patient's constitutional right to privacy . . . the right to privacy is not absolute, but may yield in the furtherance of compelling state interests. [Citations.]" (*People* v. *Stritzinger, supra,* 34 Cal.3d at p. 511.) "Even though a patient's interest in the confidentiality of the psychotherapist-patient relationship rests, in part, on constitutional underpinnings, all state 'interference' with

---

[2] Evidence Code section 1012 provides: "As used in this article, 'confidential communication between patient and psychotherapist' means information, including information obtained by an examination of the patient, transmitted between a patient and his psychotherapist in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation, or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the psychotherapist is consulted, and includes a diagnosis made and the advice given by the psychotherapist in the course of that relationship."

such confidentiality is not prohibited." (*In re Lifschutz, supra,* 2 Cal.3d at p. 432; *People* v. *Stritzinger, supra,* 34 Cal.3d at p. 511.)

C. *The Child Abuse Reporting Exception to the Psychotherapist-patient Privilege*

By requiring psychotherapists to report known or suspected instances of child abuse that are revealed during therapy, the Legislature has required patients to yield their right to privacy to the state's compelling interest in protecting children from abuse. Section 11171, subdivision (b) provides that the psychotherapist-patient privilege does not apply "to information reported pursuant to [the Act] in *any court proceeding* or administrative hearing." (Italics added.)[3] When a psychotherapist is confronted with information which reasonably leads to the suspicion that child abuse has occurred, it is obvious that section 11171, subdivision (b), by encouraging the psychotherapist to reveal the patient's confidential communications, furthers the state's compelling interest to detect, prevent and prosecute child abuse. (See *People* v. *Stritzinger, supra,* 34 Cal.3d at p. 512.)

But in this proceeding, the parties have not raised the issue of whether Dr. DeHardt acted properly in divulging Mrs. Roe's confidential communications by filing the suspected child abuse report. Mrs. Roe does not contend that section 11171 is inapplicable because Dr. DeHardt improperly filed an unauthorized report. Mrs. Roe's primary contention is that section 11171 does not apply "to civil tort litigation between former spouses where the litigated issue does not come within the purpose of the [Act]." Thus, in determining the scope of permissible discovery herein, we will assume that Dr. DeHardt's report was required or authorized by the Act.

■ "When the right to disclosure clashes with a privilege, the court is required to 'indulge in a careful balancing' of the need for disclosure against the fundamental right of privacy. [Citation.] The scope of the privilege is determined by balancing the interests protected by shielding the evidence sought with those advanced by disclosure. [Citations.] When the balance swings in favor of disclosure, the court is required to limit the scope of discovery 'to the extent necessary for a fair resolution of the lawsuit.' [Citations.]" (*Scull* v. *Superior Court, supra,* 206 Cal.App.3d at pp. 790-791.)

The discovery sought by Mr. Roe is necessary to authenticate Dr. DeHardt's suspected child abuse report, to confirm that the information

---

[3] And the Legislature has also declared that when the patient is under the age of 16, there is no psychotherapist-patient privilege if "[t]he psychotherapist has reasonable cause to believe that the patient has been the victim of a crime and that disclosure of the communication is in the best interest of the child." (Evid. Code, § 1027.)

contained in the report originated from Mrs. Roe, and to ascertain Dr. DeHardt's oral report to department of children's services social workers who investigated the matter. The state's interest in enabling litigants to conduct necessary discovery is not trivial. "The state has a significant interest in facilitating ' ". . . the ascertainment of truth and the just resolution of legal claims . . . ." ' (*Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 657-658 [125 Cal.Rptr. 553, 542 P.2d 977]; see also *Caesar* v. *Mountanos* [(9th Cir. 1976)] 542 F.2d [1064], 1069.) Indeed, '[t]he very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence.' (*United States* v. *Nixon* (1974) 418 U.S. 683, 709 [41 L.Ed.2d 1039, 1064, 94 S.Ct. 3090].) Moreover, of constitutional dimension is the right of society to seek the redress of wrongs committed against its citizens. [Citation.]" (*Scull* v. *Superior Court, supra,* 206 Cal.App.3d at p. 790.)

It is against this backdrop that we review the pertinent facts.

## FACTS

Dr. DeHardt was Mrs. Roe's psychotherapist both before and after Mrs. Roe filed the dissolution action. While the dissolution action was pending on May 9, 1988, Dr. DeHardt filed a suspected child abuse report.

In part E-1 of the report, Dr. DeHardt wrote that the incident occurred in Mr. Roe's home when the minor was in Mr. Roe's custody. In response to part E-2, which asked the reporting party to designate the type of abuse, Dr. DeHardt checked three boxes to allege "physical abuse," "mental abuse," and "neglect." And in response to part E-3, which asked the reporting party to provide a "narrative description," Dr. DeHardt wrote: "Minor . . . is in primary custody of his mother . . . . When in the custody of his father . . . the child reports a variety of types of abuse to his mother upon his return . . . ."

Part E-4 of the form asked the reporting party to "summarize what the abused child or person accompanying the child said happened." Dr. DeHardt wrote: "Hard pinching which causes bruises, forcing the child to smell father's body parts, urinating contests, refusal to allow child to call mother, lack of hygiene and health care noted by mother."

Part E-5 of the form asked the reporting party to "explain known history of similar incident(s) for this child." Dr. DeHardt responded: "Clint Roe has a history of poor impulse control and family violence. The mother has been increasingly worried when Mr. Roe has physical custody."

Ms. Smith, a social worker with the department of children's services (DCS), investigated Dr. DeHardt's report by interviewing Mrs. Roe and Dr. DeHardt, and also by observing the minor.[4] On or about August 10, 1988, Ms. Smith advised Mrs. Roe that the DCS would be filing a dependency petition in juvenile court (Welf. & Inst. Code, § 300) and that the minor might be placed in a foster home unless Mrs. Roe obtained an ex parte order from the superior court restricting Mr. Roe's visitation rights.

On August 10, 1988, Mrs. Roe obtained a temporary restraining order from the superior court that required monitored visitation by Mr. Roe pending a hearing on the order to show cause which was set for August 31, 1988. The temporary restraining order prevented Mr. Roe from taking the minor on a planned vacation, and required that their visits take place in the DCS offices.

On August 15, 1988, Mrs. Roe's attorney, Mr. Meyberg, notified Ms. Smith of the August 31 superior court hearing and asked her to delay the proposed September 1, 1988, DCS filing of a dependency petition until after an investigation was completed. Mr. Meyberg's letter to Ms. Smith stated in relevant part: "I wish to point out to you again, as I did in our telephone conversation of August 10, that your 'filing' on September 1 without a full investigation may very well cause irreparable harm not only to the relationship between Mr. Roe and his son, but more importantly, between Mr. and Mrs. Roe in their ability to parent together. Irrespective of our statements, I do not know whether Mr. Roe fully believes that his wife was not the instigator of this situation. Certainly the fact that she has 'cooperated' by providing you her viewpoint of what has transpired is not in and of itself going to help the situation." Mr. Meyberg further asked Ms. Smith to appear at the August 31 superior court hearing to "support the continuance of the order for monitored visitation, assuming that Mr. Roe refuses to agree to the continuation of the order, and in that manner, protect [the minor] until your [e]valuation has been concluded. If it turns out that the concerns are not supported, then no 'filing' would be necessary and the harm could be kept to a minimum. . . ."

The DCS, however, did not participate at the August 31 and September 1, 1988, hearing on the order to show cause. The superior court, after hearing Mrs. Roe's testimony, found no "evidence of child abuse which would justify the imposition of a monitored visitation order." But the superior court was "sufficiently concerned" to request an additional report from the child psychologist who had examined the minor. The matter was

---

[4] Section 11167, subdivision (b) provides that "Information relevant to the incident of child abuse may also be given to an investigator from a child protective agency who is investigating the known or suspected case of child abuse."

continued until October 11, 1988, for this reason. We infer from the absence in the record of any subsequent superior court order on this subject that the superior court took no further action to limit Mr. Roe's visitation rights.

On September 13, 1988, the DCS filed a dependency petition in juvenile court. However, on April 4, 1989, the juvenile court dismissed the dependency petition for lack of evidence. No evidentiary hearing was ever held in juvenile court.

Prior to the dismissal of the juvenile court petition, Mr. Roe filed this action against Mrs. Roe for defamation, malicious prosecution, negligent and intentional infliction of emotional distress, negligence, interference with visitation rights and conspiracy. The third amended complaint alleges Mrs. Roe made false statements to Dr. DeHardt, who in turn filed a suspected child abuse report which allegedly repeats Mrs. Roe's defamatory statements.

In January 1989, Mr. Roe attempted to take Dr. DeHardt's deposition, but Dr. DeHardt refused to reveal any confidential communications protected by the psychotherapist-patient privilege (Evid. Code, §§ 1012, 1014) and essentially answered no questions.

In June 1990, Mr. Roe moved to compel Dr. DeHardt to give limited deposition testimony for the purposes of authenticating Dr. DeHardt's suspected child abuse report, ascertaining Dr. DeHardt's oral communications with DCS social workers who investigated Dr. DeHardt's report, and determining whether Dr. DeHardt's report was based on statements made by Mrs. Roe.

The superior court granted Mr. Roe's motion on the ground that the limited information sought to be obtained from Dr. DeHardt was not protected by the psychotherapist-patient privilege because that information had already been reported under the Act. The superior court held that the child abuse reporting exception under section 11171, subdivision (b) applies to this case.

On August 3, 1990, the superior court denied Mrs. Roe's motion for reconsideration and granted the motion to compel Dr. DeHardt's limited deposition. Mrs. Roe filed this petition for writ of mandate on September 10, 1990. ■ ■■ ■■ ■ Dr. DeHardt's deposition was taken on October 2, 1990, and the parties have stipulated that the portions of her testimony

concerning communications between Mrs. Roe and Dr. DeHardt shall not be used for any purpose pending the outcome of this proceeding.[5]

After we summarily denied Mrs. Roe's petition, the California Supreme Court transferred the matter back to this court with directions to vacate our order denying mandate and to issue an alternative writ. We have complied with the Supreme Court's order and again deny the petition for the reasons set forth below.

## ISSUE

Mrs. Roe contends that the superior court erred in applying the child abuse reporting exception to the information reported by Dr. DeHardt pursuant to the Act (§ 11171, subd. (b)).

## DISCUSSION

■ We begin by noting that those who knowingly or recklessly file false child abuse reports may be sued unless they are protected by statutory immunity. Mrs. Roe is not immune from being sued for filing a false child abuse report if "it can be proven that [Mrs. Roe caused] a false report [to be] made and [Mrs. Roe] knew that the report was false or was made with reckless disregard of the truth or falsity of the report . . . ." (§ 11172, subd. (a).)[6] By stating that Mrs. Roe is not immune from suit, we do not imply that any factual allegations of the complaint have been resolved against Mrs. Roe. On the contrary, we express no opinion as to whether

---

[5] We conclude the issue is not moot despite the completion of Dr. DeHardt's deposition. Where, as here, a case poses an issue of fundamental public interest, is likely to recur and yet is likely to escape review, this court may exercise its inherent discretion to resolve the issue. (*United Farm Workers of America* v. *Superior Court* (1975) 14 Cal.3d 902, 906 [122 Cal.Rptr. 877, 537 P.2d 1237]; *Mann* v. *Superior Court* (1986) 181 Cal.App.3d 372, 374 [226 Cal.Rptr. 263].)

[6] The Act sets forth the following scheme with respect to immunity: A psychotherapist who reports a known or suspected instance of child abuse shall not be civilly or criminally liable for any report "required or authorized" by the Act. (§ 11172, subd. (a).) The same immunity that applies to psychotherapists also applies to child care custodians, other health practitioners, employees of child protective agencies, and commercial film and photographic print processors. (§ 11172, subd. (a).)

In addition, all other persons who report known or suspected instances of child abuse (e.g., parents, family members, or friends who are not child care custodians, health practitioners, employees of child protective agencies, or commercial film and photographic print processors) shall not be civilly or criminally liable for any report authorized by the Act "unless it can be proven that a false report was made and the person knew that the report was false or was made with reckless disregard of the truth or falsity of the report . . . ." (§ 11172, subd. (a).)

Mrs. Roe knowingly or recklessly made false statements to Dr. DeHardt with the purpose of causing Dr. DeHardt to file a false suspected child abuse report. Nor do we decide whether Mrs. Roe knew that Dr. DeHardt had an affirmative duty to report known or suspected instances of child abuse under the Act.[7] The only issue before us is whether the child abuse reporting exception of section 11171, subdivision (b) should be applied to the information reported by Dr. DeHardt.[8]

■ On balance, we conclude that Mr. Roe's need for disclosure outweighs Mrs. Roe's right to privacy. One of the primary reasons for our conclusion is that Mrs. Roe's confidential communications have already been disclosed to several parties, including the DCS and at least two social workers. Under these circumstances, it would be obstructionist to deny Mr. Roe discovery of previously disclosed information. If we were to preclude discovery, we would render section 11172, subdivision (a) meaningless by giving Mrs. Roe de facto immunity from liability for filing a false child abuse report. The evidence which Mr. Roe seeks from Dr. DeHardt is essential to the adjudication of Mr. Roe's complaint. Mr. Roe stands little chance of proving his allegations if he cannot authenticate Dr. DeHardt's report, or confirm that the information in the report came from Mrs. Roe. "The state's interest in facilitating the ascertainment of truth in connection with legal proceedings is substantial enough to compel disclosure of a great variety of confidential material, including even communications between a psychotherapist and his patient. [Citation.]" (*Jones* v. *Superior Court* (1981) 119 Cal.App.3d 534, 550 [174 Cal.Rptr. 148]; see *Scull* v. *Superior Court, supra*, 206 Cal.App.3d at pp. 790-791.)[9]

---

[7] In his opposition to the instant petition, Mr. Roe has submitted documentary evidence to support his theory that Mrs. Roe knew that Dr. DeHardt was a mandatory reporter under the Act. By denying the petition, we do not imply that we have ruled in Mr. Roe's favor on the question of whether Mrs. Roe knew of Dr. DeHardt's affirmative obligation to report known or suspected instances of child abuse under the Act.

[8] For the purposes of this proceeding we assume that Mrs. Roe's communications with Dr. DeHardt were "confidential communications" as defined in Evidence Code section 1012. By making this assumption, we do not decide whether Mrs. Roe waived the psychotherapist-patient privilege by making other voluntary disclosures (Evid. Code, § 912, subd. (a)), or whether the privilege is inapplicable because Mrs. Roe obtained Dr. DeHardt's services in order to obtain her assistance in filing a false child abuse report (Evid. Code, § 1018).

[9] Notwithstanding our quotation of the above passage from *Jones* v. *Superior Court, supra*, 119 Cal.App.3d at page 550, we stress that in this case the confidential material has already been disclosed. By compelling Dr. DeHardt's testimony, the superior court did nothing to force the disclosure of previously undisclosed confidential communications. Accordingly, the superior court did not violate Evidence Code section 915, which precludes the presiding officer from requiring the disclosure of information claimed to be privileged in order to rule on the claim of privilege. (Cf. *Hammarley* v. *Superior Court* (1979) 89 Cal.App.3d 388, 402-403 [153 Cal.Rptr. 608], disapproved on other grounds in *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 813, fn. 29 [268 Cal.Rptr. 753, 789 P.2d 134].)

And if we were to suppress Dr. DeHardt's testimony, we would also reach a result which is inconsistent with Civil Code section 48.7, which contemplates civil liability after conclusion of the criminal case for those who file false child abuse reports which result in criminal actions. It is clear from the entire statutory scheme concerning child abuse reporting that the Legislature never intended to provide immunity to patients who knowingly or recklessly cause their psychotherapists to file false child abuse reports. We note that Evidence Code section 1018 provides that "[t]here is no [psychotherapist-patient] privilege . . . if the services of the psychotherapist were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a tort or to escape detection or apprehension after the commission of a crime or a tort." By applying section 11171, subdivision (b) to the information reported by Dr. DeHardt under the Act, we avoid reaching a result which conflicts with section 11172, subdivision (a) and Evidence Code section 1018. We also avoid violating the requirement that courts should, "[w]henever possible, [give] effect . . . to the statute as a whole, and to every word and clause, so that no part or provision will be rendered useless or meaningless. [Citations.]" (*Hammarley* v. *Superior Court, supra,* 89 Cal.App.3d at p. 396.)

We hold that the child abuse reporting exception of section 11171, subdivision (b) applies to the information reported by Dr. DeHardt.

We distinguish *People* v. *Stritzinger, supra,* 34 Cal.3d 505, in which the majority of the Supreme Court concluded that the child abuse reporting exception under section 11171, subdivision (b) was erroneously applied to information which the psychotherapist had no obligation to report under the Act. In *Stritzinger,* the psychotherapist filed an initial child abuse report after his 16-year-old patient revealed that her stepfather (defendant) had sexually molested her. Thereafter, the psychotherapist had a therapeutic session with the defendant himself, and the defendant confirmed the incidents related by his stepdaughter. The defendant did not, however, disclose any other incidents of abuse beyond those which the psychotherapist had already reported. Nevertheless, the psychotherapist was misled by a sheriff's deputy into believing that he was required under the Act to disclose the defendant's confidential communications concerning the same incidents previously reported. And at the defendant's criminal trial, the defendant's confidential communications were admitted over his objection. On the defendant's appeal from his conviction, the majority of the Supreme Court held that because the psychotherapist "was under no statutory obligation to make a second report concerning the same activity" (*id.* at p. 513), the information disclosed in the second report remained privileged notwithstanding section 11171, subdivision (b).

In this case, on the other hand, such a narrow construction of section 11171, subdivision (b) is unwarranted. Dr. DeHardt learned of the alleged abuse from only one patient, Mrs. Roe. Dr. DeHardt did not make a second, repetitive report based on statements made by Mr. Roe, Mr. Roe was not Dr. DeHardt's patient, and this is not a criminal prosecution against Mr. Roe. As the majority opinion in *Stritzinger* stated, "if [the psychotherapist] had first learned of the fondling incidents from defendant himself, he would have been bound to report that information as provided in the act." (*People v. Stritzinger, supra,* 34 Cal.3d at p. 513.) That is exactly the situation in this case. Having heard of the incidents of alleged abuse from Mrs. Roe, Dr. DeHardt was bound to report that information under the Act. Since the information was required and authorized to be reported under the Act, the child abuse reporting exception under section 11171, subdivision (b) applies to that information.

We recognize that "[t]he accurate diagnosis and effective treatment in psychotherapy are greatly dependent upon conditions of trust and confidentiality between patient and therapist." (*Scull v. Superior Court, supra,* 206 Cal.App.3d at p. 789.) Nevertheless, we are compelled to reach this result because the Legislature has determined the patient's right to privacy must yield in the furtherance of the state's compelling interest to further the reporting, detection and prosecution of child abuse cases. "Lest there be any doubt that the Legislature intended the child abuse reporting obligation to take precedence over the physician-patient or psychotherapist-patient privilege, section 11171, subdivision (b), explicitly provides an exception to these very privileges . . . . The Legislature obviously intended to provide specific exception to the general privileges set out in the Evidence Code (Evid. Code, §§ 994, 1014) so that incidents of child abuse might be promptly investigated and prosecuted." (*People v. Stritzinger, supra,* 34 Cal.3d at p. 512.) And at the same time the Legislature obviously intended to discourage false child abuse reports by failing to provide immunity for those who knowingly or recklessly make false reports and also by providing a remedy under section 11172, subdivision (a) for persons who are injured by such false reports. Although this particular action is not a prosecution of child abuse, it nevertheless falls under the ambit of the child abuse reporting exception (§ 11171, subd. (b)) for all the reasons set forth above.[10]

---

[10] We emphasize that nothing in this opinion should be interpreted to mean that Mrs. Roe has waived the confidentiality of other confidential communications that were not disclosed in Dr. DeHardt's report. We do not decide that issue, which is not before us.

## DISPOSITION

We deny the petition for writ of mandate, and the alternative writ of mandate is discharged.

Spencer, P. J., and Vogel, J., concurred.