[No. A069019. First Dist., Div. One. June 19, 1996.]

JAMES A. BEGIER, Plaintiff and Appellant, v.
PATRICIA M. STROM, Defendant and Respondent.

**COUNSEL**

R. Stevens Condie for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

## Opinion

**DOSSEE, J.**—Plaintiff, acting in propria persona, filed suit against his (now former) wife for malicious prosecution and intentional infliction of emotional distress based upon her alleged conduct in (1) filing a false police report accusing plaintiff of molesting the couple's young daughter and (2) repeating that charge in the couple's pending dissolution action.

The trial court sustained defendant's demurrer as to the cause of action for intentional infliction of emotional distress but overruled the demurrer as to the cause of action for malicious prosecution. Thereupon, defendant moved for summary judgment on the cause of action for malicious prosecution, and the trial court granted the motion. Judgment was entered in favor of defendant. Plaintiff (now represented by counsel) appeals; defendant has not submitted a respondent's brief.

### Discussion

This appeal requires us to examine two statutory remedies afforded to those falsely accused of child abuse. First, in the Child Abuse and Neglect Reporting Act (Pen. Code, § 11164 et seq.) the Legislature has declared that any person (other than those required by law to make a report of suspected child abuse) who knowingly makes a false report of child abuse is liable for damages. (Pen. Code, § 11172, subd. (a).)[1] Second, in Family Code section 3027 the Legislature has authorized an award of sanctions against any party in a domestic relations proceeding who falsely accuses another party of child abuse. And the Legislature has provided that the award of sanctions shall be cumulative to any other remedies available to the party wrongly accused.[2]

---

[1] Penal Code section 11172, subdivision (a), provides in part: "No child care custodian, health practitioner, firefighter, animal control officer, humane society officer, employee of a child protective agency, child visitation monitor, or commercial film and photographic print processor who reports a known or suspected instance of child abuse shall be civilly or criminally liable for any report required or authorized by this article. Any other person reporting a known or suspected instance of child abuse shall not incur civil or criminal liability as a result of any report authorized by this article unless it can be proven that a false report was made and the person knew that the report was false or was made with reckless disregard of the truth or falsity of the report, and any such person who makes a report of child abuse known to be false or with reckless disregard of the truth or falsity of the report is liable for any damages caused."

[2] Family Code section 3027, as it read at the time of these proceedings, provided as follows: "(a) If a court determines that an accusation of child abuse or neglect made during a child custody proceeding is false and the person making the accusation knew it to be false at the time the accusation was made, the court may impose reasonable money sanctions, not to exceed one thousand dollars ($1,000) and reasonable attorney's fees incurred in recovering the sanctions, against the person making the accusation. For the purposes of this section,

## I. *Intentional Infliction of Emotional Distress*

Plaintiff's second cause of action purports to state a claim for intentional infliction of emotional distress. As noted, defendant's demurrer was sustained as to this cause of action. ■ On appeal, we assume that all facts pleaded in the complaint are true, and we give the complaint a reasonable interpretation, reading it as a whole and its parts in context. We review the complaint de novo to determine whether the complaint alleges facts sufficient to state a cause of action under any legal theory. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

■ Here, the complaint alleges that plaintiff and defendant were parties to a marital dissolution action. On August 12, 1990, about six weeks after filing the petition for dissolution, defendant filed a police report falsely accusing plaintiff of molesting the couple's young daughter. Defendant thereafter repeated the charges of molestation within the dissolution action.

In support of her demurrer, defendant asserted that the "thrust" of plaintiff's complaint for intentional infliction of emotional distress was that defendant had made false accusations *within the domestic relations proceeding.* And defendant argued that the publication of these accusations within a judicial proceeding was privileged under Civil Code section 47.[3] Plaintiff, in turn, disputed defendant's characterization of his complaint. He contended that the tortious conduct underlying his second cause of action was defendant's *filing of a false police report*—an unprivileged act when done with malice. The trial court sustained the demurrer without comment.

■ Civil Code section 47, subdivision (b), confers an unqualified privilege upon a publication made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law

---

"person" includes a witness, a party, or a party's attorney. [¶ (b) On motion by any person requesting sanctions under this section, the court shall issue its order to show cause why the requested sanctions should not be imposed. The order to show cause shall be served on the person against whom the sanctions are sought and a hearing thereon shall be scheduled by the court to be conducted at least 15 days after the order is served. [¶ (c) The remedy provided by this section is in addition to any other remedy provided by law."

[3]"The elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. [Citations.] Whether treated as an element of the prima facie case or as a matter of defense, it must also appear that the defendants' conduct was unprivileged. [Citations.]" (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 394 [89 Cal.Rptr. 78]; accord, *Cote* v. *Henderson* (1990) 218 Cal.App.3d 796, 805-806 [267 Cal.Rptr. 274].)

. . . ." In section 47, subdivision (c), the statute confers a qualified privilege upon a publication made to "interested" persons.[4] Although the statute is most commonly asserted in actions for defamation, it applies to virtually all other causes of action, except malicious prosecution, based upon publication of assertedly offensive material. (*Ribas* v. *Clark* (1985) 38 Cal.3d 355, 364 [212 Cal.Rptr. 143, 696 P.2d 637] [invasion of privacy]; *Green* v. *Uccelli* (1989) 207 Cal.App.3d 1112, 1124 [255 Cal.Rptr. 315] [intentional infliction of emotional distress].)

There can be little doubt, as plaintiff himself seems to concede, that insofar as plaintiff alleges defendant made false accusations within the dissolution action, defendant's statements are privileged and cannot give rise to a cause of action for intentional infliction of emotional distress. (*Nagy* v. *Nagy* (1989) 210 Cal.App.3d 1262, 1270-1271 [258 Cal.Rptr. 787]; *Twyford* v. *Twyford* (1976) 63 Cal.App.3d 916, 924-925 [134 Cal.Rptr. 145].) But plaintiff is correct in his assertion that his complaint alleges more than statements made within the dissolution action; he also alleges that defendant filed a false police report.

The privilege for statements made in a "judicial proceeding" does not apply to statements made outside of the courtroom to nonparties unconnected to the proceedings. (*Shahvar* v. *Superior Court* (1994) 25 Cal.App.4th 653, 657-659 [30 Cal.Rptr.2d 597]; *Susan A.* v. *County of Sonoma* (1991) 2 Cal.App.4th 88, 93-94 [3 Cal.Rptr.2d 27]; see *Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 212, 219-220 [266 Cal.Rptr. 638, 786 P.2d 365].) Here, plaintiff alleged that defendant told the police—nonparties to the dissolution action—that plaintiff had molested his daughter. There is nothing on the face of the complaint to suggest that the police or the police report were connected to the pending litigation. We therefore hold that the "judicial proceeding" privilege does not bar plaintiff's cause of action for intentional infliction of emotional distress based upon defendant's conduct in filing a false police report.

The question remains, however, whether defendant's report to the police was nonetheless privileged as a statement made in any "other official proceeding authorized by law." In one relatively recent case, the Court of Appeal held that a false police report is not absolutely privileged, as the police department is not a quasi-judicial body. Instead, the court held that a

---

[4]Civil Code section 47 provides in pertinent part as follows: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law . . . . [¶] (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested . . . ." The privilege for communications to interested persons is "qualified" in that it applies only if the communication was without malice.

false police report is entitled only to the qualified privilege for communications to interested parties. (*Fenelon* v. *Superior Court* (1990) 223 Cal.App.3d 1476 [273 Cal.Rptr. 367].)

Subsequently, however, three other courts have disagreed with *Fenelon* and have held that a report of suspected criminal activity made to an investigative agency is absolutely privileged. (*Fremont Comp. Ins. Co.* v. *Superior Court* (1996) 44 Cal.App.4th 867, 875 [52 Cal.Rptr.2d 211] [report to district attorney and Dept. of Insurance]; *Passman* v. *Torkan* (1995) 34 Cal.App.4th 607 [40 Cal.Rptr.2d 291] [letter to district attorney]; *Hunsucker* v. *Sunnyvale Hilton Inn* (1994) 23 Cal.App.4th 1498, 1502 [28 Cal.Rptr.2d 722] [report to police].) In *Passman, supra,* 34 Cal.App.4th at pages 616-617, the court cited a string of precedent cases holding that a communication designed to initiate a criminal prosecution qualifies for immunity as a publication "in any other official proceeding authorized by law." (E.g., *Williams* v. *Taylor* (1982) 129 Cal.App.3d 745, 753-754 [181 Cal.Rptr. 423] [report to police] *Tiedemann* v. *Superior Court* (1978) 83 Cal.App.3d 918 [148 Cal.Rptr. 242] [report to IRS regarding possible tax fraud]; see also *Cote* v. *Henderson, supra,* 218 Cal.App.3d 796, 806 [report to police and district attorney]; *Brody* v. *Montalbano* (1978) 87 Cal.App.3d 725, 732 [151 Cal.Rptr. 206] [complaint to school board]; *Forro Precision, Inc.* v. *Intern. Business Machines* (9th Cir. 1982) 673 F.2d 1045, 1055 [report to police].)

Plaintiff contends that we need not resolve the conflict in the case law over Civil Code section 47, because there is another, more specific statute which governs the present circumstances, namely, the Child Abuse and Neglect Reporting Act (Pen. Code, § 11164 et seq.) The purpose of this act is "to protect children from abuse." (Pen. Code, § 11164, subd. (b).) To that end, the act requires certain classes of workers (child care custodians, health practitioners, etc.) to report any known or suspected instances of child abuse to a child protective agency.[5] (Pen. Code, § 11166.) Failure to make such a report is a misdemeanor. (Pen. Code, § 11172, subd. (e).) At the same time, the act grants absolute civil and criminal immunity to those same classes of workers for making such a report. (Pen. Code, § 11172, subd. (a).) However, only qualified immunity is granted to persons who are not statutorily obligated to make a report: "Any other person reporting a known or suspected instance of child abuse shall not incur civil or criminal liability as a result of any report authorized by this article unless it can be proven that a false report was made and the person knew that the report was false or was made with reckless disregard of the truth or falsity of the report, *and any such person who makes a report of child abuse known to be false or with reckless disregard of the truth or falsity of the report is liable for any damages caused.*" (Pen. Code, § 11172, subd. (a), italics added.)

---

[5] A "child protective agency" includes a police department. (Pen. Code, § 11165.9.)

Plaintiff argues that whether or not the filing of a false police report of other types of criminal activity is privileged under section 47, subdivision (b), of the Civil Code, the Legislature's direction in Penal Code section 11172 that a person who knowingly makes a false report of child abuse "is liable for any damages caused" creates a limited exception to the privilege. We find the argument convincing.

Although the statutory privilege of Civil Code section 47, subdivision (b), is often called "absolute," the courts have nonetheless held that it does not preclude liability for malpractice in a lawsuit against a negligent expert witness by the party who hired the witness (*Mattco Forge, Inc.* v. *Arthur Young & Co.* (1992) 5 Cal.App.4th 392, 402-406 [6 Cal.Rptr.2d 781]); liability for breach of contract based upon an employee-witness's wrongful disclosure of trade secrets (*ITT Telecom Products Corp.* v. *Dooley* (1989) 214 Cal.App.3d 307, 317-320 [262 Cal.Rptr. 773]); or liability of a psycho-therapist for disclosing a patient's confidential communications during a custody proceeding (*Cutter* v. *Brownbridge* (1986) 183 Cal.App.3d 836, 841-848 [228 Cal.Rptr. 545]).

*Roe* v. *Superior Court* (1991) 229 Cal.App.3d 832 [280 Cal.Rptr. 380], is instructive. In that case, a husband sued his former wife based upon the wife's allegedly false statements to her psychotherapist, accusing the hus-band of child abuse, which in turn led the psychotherapist to file a report under the Child Abuse and Neglect Reporting Act. The question for the appellate court was whether the husband was entitled to discovery of the wife's statements to her psychotherapist, and the court concluded he was. In so holding, the court observed that pursuant to Penal Code section 11172, subdivision (a), the wife was not immune from suit for filing a false child abuse report. (229 Cal.App.3d at p. 842.) And the court reasoned that "[i]f we were to preclude discovery [by applying the psychotherapist-patient privilege of Evidence Code section 1014], we would render section 11172, subdivision (a) meaningless by giving [the wife] de facto immunity from liability for filing a false child abuse report. The evidence which [the husband] seeks from [the psychotherapist] is essential to the adjudication of [the husband's] complaint. [The husband] stands little chance of proving his allegations if he cannot authenticate [the psychotherapist's] report, or con-firm that the information in the report came from [the wife]." (*Id.* at p. 843.)

Although *Roe* involved only a discovery issue and is not squarely on point, the obvious implication from the opinion is that the Child Abuse and

Neglect Reporting Act imposes liability upon those who file a false report of child abuse and the act overrides a statutory privilege.[6]

Indeed, we discern within the Child Abuse and Neglect Reporting Act a legislative effort to balance, on the one hand, the public interest in ferreting out cases of child abuse so that the child victims can be protected from harm and, on the other hand, the policy of protecting the reputations of those who might be falsely accused. (See *Roe* v. *Superior Court, supra*, 229 Cal.App.3d at pp. 838, 845.) The Legislature has struck that balance by withholding immunity from those who knowingly make false reports of child abuse.[7] If we were to hold that same conduct privileged under Civil Code section 47, we would essentially nullify the Legislature's determination that liability should attach. Our task is to read statutes with reference to the whole system of law and to avoid rendering a statute meaningless and ineffective. To that end, we hold that the statutory privilege of Civil Code section 47, subdivision (b), does not immunize a party who would otherwise be liable under Penal Code section 11172, subdivision (a).

## II. *Malicious Prosecution*

■ Plaintiff's first cause of action for malicious prosecution is based upon defendant's conduct within the dissolution action. Plaintiff alleges that defendant injected the false allegations of child molestation into the proceedings for the purpose of terminating plaintiff's relationship with his daughter.

The declarations submitted in connection with defendant's motion for summary judgment reveal that in the custody proceedings within the dissolution action the trial court heard conflicting opinions from several experts on whether plaintiff had molested his daughter. On September 6, 1991, in a document entitled "Intended Statement of Decision," the trial court concluded that defendant (petitioner in the dissolution action) had failed to meet her burden of proving that plaintiff had molested the child. Custody was awarded to defendant, and plaintiff was granted visitation rights. Thereafter, in December 1991, plaintiff (respondent in the dissolution action) moved for sanctions against defendant pursuant to Civil Code section 4611 (now Fam.

---

[6]The Child Abuse and Neglect Reporting Act expressly declares that the psychotherapist-patient privilege does not apply to information reported in court proceedings. (Pen. Code, § 11171, subd. (b).)

[7]In Civil Code section 48.7, the Legislature again has struck the balance by providing that a person who made allegations of child abuse which resulted in criminal charges is immune from civil liability for defamation while the charges are pending and only if the allegations were "reasonably believed to be in furtherance of the prosecution of the criminal charges." Thus, again the Legislature contemplated liability for those who file false child abuse reports. (*Roe* v. *Superior Court, supra*, 229 Cal.App.3d at p. 844.)

Code, § 3027) for making false accusations of child abuse. The request for sanctions was denied.

In support of her motion for summary judgment, defendant argued, inter alia, that a cause of action for malicious prosecution will not lie in family law matters, citing *Bidna* v. *Rosen* (1993) 19 Cal.App.4th 27 [23 Cal.Rptr.2d 251]. The trial court agreed and granted defendant's motion. We affirm that ruling.

The plaintiff in an action for malicious prosecution must show "that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice . . . ." (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608]; accord, *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498].)

In *Bidna* v. *Rosen, supra,* 19 Cal.App.4th 27, the court reviewed the existing case law and found "an abiding judicial reluctance" to entertain malicious prosecution actions arising out of family law proceedings, albeit for varying reasons. (P. 32.) First, in *Twyford* v. *Twyford, supra,* 63 Cal.App.3d 916, 922 the court held the wife's requests for admissions (essentially accusing her husband of forgery) within a contempt proceeding for failure to pay over a tax refund did not constitute a "separate proceeding" to support a malicious prosecution action. (See also *Lossing* v. *Superior Court* (1989) 207 Cal.App.3d 635, 638-639 [255 Cal.Rptr. 18].)[8]

Then in *Chauncey* v. *Niems* (1986) 182 Cal.App.3d 967 [227 Cal.Rptr. 185], the court held that the husband had failed to show that the wife's order to show cause (OSC) re contempt and OSC re modification of child visitation and support were terminated in his favor. The court reasoned that because the parties' child visitation dispute was settled by mutual agreement it was not possible to infer guilt or innocence, favorability or unfavorability. (*Id.* at pp. 976-977.)[9]

In *Green* v. *Uccelli, supra,* 207 Cal.App.3d 1112, 1121-1123, the court held more broadly that withdrawing an OSC re contempt from the calendar

---

[8]This reasoning is supported by cases outside the family law context which have held that subsidiary procedural actions within a lawsuit do not constitute a separate proceeding upon which an action for malicious prosecution can be premised. (*Adams* v. *Superior Court* (1992) 2 Cal.App.4th 521, 528 [3 Cal.Rptr.2d 49] [motion for reconsideration]; *Silver* v. *Gold* (1989) 211 Cal.App.3d 17, 23-24 [259 Cal.Rptr. 185] [motion to disqualify counsel].)

[9]We observe that when, as here, the underlying action is a child custody dispute, it is doubtful that the plaintiff could ever establish the element of favorable termination. To prevail in a malicious prosecution action, the termination of the prior action "must demonstrate the innocence of the accused." (*Cantu* v. *Resolution Trust Corp.* (1992) 4 Cal.App.4th

in a marital dissolution action cannot provide the basis for a malicious prosecution action. In so holding, the court noted the unique characteristics of dissolution actions: "In adopting and regularly amending the Family Law Act, the Legislature has done its best to provide a process which reduces acrimony as much as is possible in our adversary system of justice. . . . However, given the deeply personal nature of the issues . . . and despite best efforts of the Legislature, the bench and the bar, it is not surprising there is still considerable bitterness between spouses whose marriage is being dissolved. . . . [¶] In this atmosphere, the judge hearing the domestic relations calendar must regularly issue orders which do not and most often cannot satisfy either party. . . ." (*Id.* at pp. 1121-1122.)

After reviewing these precedent cases, the court in *Bidna* v. *Rosen, supra,* 19 Cal.App.4th 27, concluded that "[t]he cases are . . . heading in one direction, though they have not yet reached their destination: an absolute bar of malicious prosecution claims based on *any* kind of family law motion or OSC." (*Id.* at p. 34.) The *Bidna* court examined the policy reasons favoring a "bright line rule" as well as the arguable inadequacy of family law remedies and held that no malicious prosecution action may arise out of unsuccessful family law motions or OSC's. (*Id.* at pp. 35-37.) The court concluded instead that even a spouse who is subjected to an egregious barrage of motions within the dissolution action is limited to recovering sanctions and attorney fees within the action itself. (*Id.* at pp. 36-38; see also *Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d 863, 872-874.)

Plaintiff argues that *Bidna* should be distinguished from the present case on the ground that plaintiff was falsely accused of child abuse and is therefore entitled to the protection of Family Code section 3027. That statute not only provides for sanctions against a party who makes a false accusation of child abuse but further authorizes other remedies as well. (See fn. 2, *ante.*) Thus, plaintiff argues that the Legislature has directed that an award of sanctions within the family law proceeding is *not* the exclusive remedy for a false accusation of child abuse.

Plaintiff's reasoning is flawed. Plaintiff mistakenly presumes that a malicious prosecution action exists as an "other remedy" for one falsely accused within a child custody proceeding. It does not. As the *Bidna* court recognized, no court has ever extended the tort of malicious prosecution to family law matters. Indeed, the *Bidna* court explained that its true holding was not that malicious prosecution should be *precluded* as a remedy for abusive

857, 881 [6 Cal.Rptr.2d 151].) Yet a child custody proceeding does not attempt to establish culpability of either parent; the plaintiff's innocence or guilt are not at issue. The question is the best interests of the child.

family law proceedings, but that the tort should not be *extended* into an area of law where it has not yet gone. (*Bidna* v. *Rosen, supra,* 19 Cal.App.4th at p. 38.)

We find the *Bidna* decision persuasive and follow it here. Accordingly, we conclude that the trial court properly granted summary judgment on plaintiff's cause of action for malicious prosecution.

The judgment is affirmed as to the cause of action for malicious prosecution, but the judgment is reversed as to the cause of action for intentional infliction of emotional distress. Costs are awarded to appellant.

Strankman, P. J., and Stein, J., concurred.